UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § | |
| | § | |
| v. | § | CRIMINAL NO. 4:21-CR-305-SDJ-AGD |
| | § | |
| EDWIN CORTES-TOBAR (2) | § | |

## MEMORANDUM OPINION AND ORDER

In this criminal case arising under the Maritime Drug Law Enforcement Act, 46 U.S.C. § 70501 *et seq.* (MDLEA), the Court must confirm that an alleged drug-trafficking crime occurred on board a vessel subject to the jurisdiction of the United States, providing the Court with subject-matter jurisdiction.

The United States Coast Guard encountered Defendant Edwin Cortes-Tobar and his two codefendants in an unknown, no-name, low-profile vessel in international waters off the coast of Colombia. The vessel, which contained 1,647 kilograms of cocaine, displayed no flag, had no registration documents, and presented no other indicia of nationality. Tobar and his codefendants, Carlos Alfredo Leones-Nevarez and Jaminton Valencia-Vallecilla, were identified as crewmembers of the vessel. None of the Defendants identified himself as the master or individual in charge of the vessel, and likewise no Defendant made a claim of registry or nationality as to the vessel.

Tobar and his codefendants were taken into custody and ultimately indicted on several counts, including a charge that they violated the MDLEA. (Dkt. #1). The MDLEA prohibits knowing possession of controlled substances with intent to

1

distribute aboard a vessel subject to the jurisdiction of the United States. *See* 46 U.S.C. § 70503(a)(1), (e)(1). The term "vessel subject to the jurisdiction of the United States" encompasses several categories of vessels, including a vessel "without nationality." *See id.* § 70502(c)(1)(A)–(F).

Because the Court concludes that Tobar's offense occurred on board a vessel "without nationality," and therefore a vessel subject to the jurisdiction of the United States under the MDLEA, the Court has subject-matter jurisdiction.

I.

The Felonies Clause of the U.S. Constitution grants Congress the power to "define and punish Piracies and Felonies committed on the high Seas, and Offences against the Law of Nations[.]" U.S. CONST. art. 1, § 8, cl. 10. Pursuant to the Felonies Clause, Congress enacted the MDLEA, which makes drug trafficking on certain vessels on the high seas subject to the jurisdiction of the United States. 46 U.S.C. §§ 70501 *et seq.* Specifically, the MDLEA prohibits manufacturing, distributing, or possessing with intent to distribute drugs "on board" (i) a "vessel of the United States," (ii) a "vessel subject to the jurisdiction of the United States," or (iii) "any vessel if the [defendant] is a citizen of the United States or a resident alien of the United States." 46 U.S.C. § 70503(a), (e)(1), (e)(2).

Here, Tobar is charged with conspiring to possess with the intent to distribute a controlled substance, namely cocaine, on board a "vessel subject to the jurisdiction of the United States." (Dkt. #1). Whether a vessel is "subject to the jurisdiction of the United States" under the MDLEA is a threshold inquiry to be resolved by the district

court. 46 U.S.C. § 70504(a); *see also United States v. Bustos-Useche*, 273 F.3d 622, 626 (5th Cir. 2001) (noting that this is a question of subject-matter jurisdiction to be determined by the district court). The Government bears the burden to establish that a vessel is "subject to the jurisdiction of the United States." *See, e.g., United States v. Prado*, 933 F.3d 121, 129 (2d Cir. 2019) ("[T]he burden was on the government to show that the vessel was subject to the jurisdiction of the United States.") (citing *United States v. Perlaza*, 439 F.3d 1149, 1160 (9th Cir. 2006); *United States v. Tinoco*, 304 F.3d 1088, 1114 (11th Cir. 2002)).

The MDLEA describes the categories of vessels that are "subject to the jurisdiction of the United States," *see* 46 U.S.C. § 70502(c)(1)(A)–(F), which includes a vessel "without nationality," *id*. § 70502(c)(1)(A). A vessel "without nationality," in turn, is defined to include the following:

> (A) a vessel aboard which the master or individual in charge makes a claim of registry that is denied by the nation whose registry is claimed;
>
> (B) a vessel aboard which the master or individual in charge fails, on request of an officer of the United States authorized to enforce applicable provisions of United States law, to make a claim of nationality or registry for that vessel;
>
> (C) a vessel aboard which the master or individual in charge makes a claim of registry and for which the claimed nation of registry does not affirmatively and unequivocally assert that the vessel is of its nationality[.]

46 U.S.C. § 70502(d)(1)(A)–(C).[1]

---

[1] Section 70502(d)(1) was amended on December 23, 2022. *See* James M. Inhofe National Defense Authorization Act for Fiscal Year 2023, Pub. L. No. 117-263, § 11519, 136 Stat. 2395, 4142 (2022)." *See United States v. Davila-Reyes*, 84 F.4th 400, 403 n.1 (1st Cir. Oct. 5, 2023).

3

## II.

This case presents a vessel "without nationality" scenario that does not fit squarely into Section 70502(d)(1)(A)–(C) because there was no "master" or "individual in charge" of the boat. Likewise, no claim of registry or nationality was made as to the vessel.

This does not mean, however, that Tobar's boat cannot qualify as a vessel "without nationality." As the Eleventh Circuit has explained, "Section 70502(d)(1) does not list every circumstance in which a vessel lacks nationality. It uses the word 'includes,' which ordinarily introduces only examples." *United States v. Nunez*, 1 F.4th 976, 984 (11th Cir. 2021) (Pryor, C.J.) (citing Antonin Scalia & Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts* § 15, at 132–33 (2012)), *cert. denied sub nom. Cedado Nunez v. United States*, 142 S. Ct. 2675, 212 L. Ed. 2d 762 (2022). "[I]ts use of the term 'includes' differs materially from the use of the phrase 'includes only' in the next subsection." *Id.* (citing 46 U.S.C. § 70502(e)). "That material variation confirms that the three circumstances enumerated in section 70502(d)(1) provide only examples of when a vessel lacks nationality, not an exhaustive list." *Id.* (citing Scalia & Garner, *Reading Law* § 25, at 170–73). The *Nunez* court went on to observe that a vessel "seeking the protection of nationality will usually make its

---

The amendment added § 70502(d)(1)(D), "a vessel aboard which no individual, on request of an officer of the United States authorized to enforce applicable provisions of United States law, claims to be the master or is identified as the individual in charge, and that has no other claim of nationality or registry under paragraph (1) or (2) of subsection (e)."

The amendment is not relevant to the instant case because Tobar was indicted on November 10, 2021, over one year prior to the statute being amended on December 23, 2022.

4

association with its flag state obvious—classically, by flying a flag and carrying official documents as evidence of its association with its flag state." *Id.* at 985 (citing Convention on the High Seas art. 5(2) ("Each State shall issue to ships to which it has granted the right to fly its flag documents to that effect."); *United States v. Obando*, 891 F.3d 929, 934–38 (11th Cir. 2018)).

It is undisputed that Tobar's vessel, which was discovered in the eastern Pacific Ocean in international waters, flew no flag and had no registration documents. Further, nobody aboard the vessel claimed to be the master of the vessel or the individual in charge of the vessel. Finally, no individual aboard the vessel made any claim of nationality or registry. Under the circumstances, the Government asserts that this Court has subject-matter jurisdiction.

In response, Tobar initially argues that the Court lacks jurisdiction under the MDLEA because Section 70502(d)(1)(C) has been ruled unconstitutional. Section 70502(d)(1)(C) defines one way that a vessel may qualify as a vessel "without nationality," and specifically describes a vessel "aboard which the master or individual in charge makes a claim of registry and for which the claimed nation of registry does not affirmatively and unequivocally assert that the vessel is of its nationality." The circumstances contemplated by Section 70502(d)(1)(C) are not present in this case. No one aboard Tobar's boat claimed to be the master or individual in charge and no one made any claim of registry or nationality of the vessel. The Court therefore need not address this argument.[2]

---

[2] The Court notes that Tobar's constitutional challenge is premised on an out-of-circuit opinion that has been vacated. Specifically, Tobar points to a panel decision of the First

Tobar also argues that he did, in fact, make a claim of nationality because he presented his Colombian identification card to the Coast Guard. Tobar further contends that since the vessel was located forty-five nautical miles off the coast of Colombia, it was not stateless. The Court disagrees.

Tobar's vessel did not have any of the "customary signs of nationality." *Id*. It did not fly any flag, nor did it carry any official documents as evidence of its association with its flag state. The vessel made no claim of registry. Nobody aboard the vessel claimed to be the master of the vessel or the individual in charge of the vessel. And Tobar merely identified his own nationality when he presented his personal Colombian identification card to the Coast Guard. This has no bearing on the nationality of the ***vessel***. Likewise, it is undisputed that the vessel was in international waters. Therefore, its relative proximity to Colombia, absent any indicia of Colombian nationality or registry, does not alter the MDLEA analysis.

### III.

For these reasons, the Court finds that Tobar's boat was a vessel "without nationality" under the MDLEA, and therefore qualifies as a vessel subject to the jurisdiction of the United States.[3] *See Nunez*, 1 F.4th at 986 (holding that a district

---

Circuit, which concluded that Congress exceeded its authority under Article I of the Constitution by enacting MDLEA Section 70502(d)(1)(C). *United States v. Davila-Reyes*, 23 F.4th 153 (1st Cir. 2022), *reh'g en banc granted, opinion vacated*, 38 F.4th 288 (1st Cir. 2022). This panel opinion, however, was vacated, and the First Circuit later issued an en banc opinion declining to address the constitutionality of the MDLEA. *United States v. Davila-Reyes*, 84 F.4th 400 (1st Cir. 2023).

[3] Although the Government relies on Section 70502(d)(1)(D) to establish jurisdiction, the Court declines to do so since Section 70502(d)(1)(D) did not exist at the time Tobar was indicted.

6

court had jurisdiction under similar circumstances involving a "smugglers' vessel" that had "no indicia of nationality: no registry papers, identification markings, flag, or verbal claim of nationality by anyone, let alone a master or individual in charge"). The Court has subject-matter jurisdiction.

**So ORDERED and SIGNED this 30th day of April, 2024.**

_____
SEAN D. JORDAN
UNITED STATES DISTRICT JUDGE